IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JON HOWARD VAN DE GRIFT AND SHARON ANN DUDEK-VAN DE GRIFT TRUST, MARLENE J. WALSHIN TRUST, ROGER MAUER, CYNTHIA MAUER,<br><br>      Plaintiffs,<br><br>      v.<br><br>RSUI GROUP, INC., RSUI INDEMNITY COMPANY, LANDMARK AMERICAN INSURANCE COMPANY, COVINGTON SPECIALTY INSURANCE COMPANY, CAPSTONE REAL ESTATE SERVICES, INC., ROGER MCCONKIE, as Receiver, and JOHN DOES I-XXX,<br><br>      Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS<br><br><br>Case No. 2:11-CV-914 TS |

This matter is before the Court on Defendant Capstone Real Estate Services, Inc.'s ("Capstone") Motion to Dismiss for Lack of Personal Jurisdiction.[1] The Court has reviewed the briefing submitted by the parties and considered the arguments presented in oral argument at the hearing held May 21, 2012. For the reasons discussed more fully below, the Court will grant the Motion.

---

[1] Docket No. 39.

I. BACKGROUND

This dispute centers on allegations of breach of contract and bad faith insurance settlements after Hurricane Ike destroyed the Crosby Green apartment complex in Baytown, Texas ("Crosby Green"). Plaintiffs are suing Capstone for breach of its contractual duty to provide real estate management services to Crosby Green. Specifically, Plaintiffs allege that Capstone provided inaccurate building information about Crosby Green that ultimately resulted in inadequate insurance coverage.

Plaintiffs are investors from California, Nevada, and North Carolina. Capstone is a real estate services company incorporated in Texas with its principle place of business in Texas. Defendant Roger McConkie (referred to hereinafter as either "Defendant McConkie" or the "Receiver") is a court appointed receiver and a resident of Utah.

Plaintiffs were victim investors of an alleged real estate Ponzi scheme that involved the purchase of Crosby Green. In early 2008, before the Ponzi scheme was discovered, Crosby Green's owner Madison Real Estate Group, LLC ("Madison") hired Capstone to provide "management services" to Crosby Green that related to a master insurance policy. In helping to secure this insurance, Capstone interacted with Defendant Hilb, Rogal & Hobbs ("HRH"), a Texas insurance agent. HRH requested that Capstone provide building information concerning Cosby Green: its location, its replacement value, and its square footage. In response to this request Capstone gathered this information from Utah-based Qwest Management, Crosby Green's previous property manager, and then passed it on to HRH. HRH relied on this information, which turned out to be materially inaccurate, and consequently secured inadequate insurance coverage for Crosby Green.

In late 2008—after the SEC discovered the alleged real estate Ponzi scheme—an investigation of Madison ensued.  Defendant McConkie was appointed as Receiver and at all relevant times was located in Salt Lake City, Utah.  His responsibilities included securing and stabilizing fourteen apartment complexes (the "Receivership Properties"), including Crosby Green, that were purchased as part of the Ponzi scheme.  The Receiver contacted Capstone, informed it that he had been appointed as Receiver over Crosby Green, and instructed Capstone to report to him, rather than to Madison, on all matters pertaining to Crosby Green.

Over the course of a year Capstone directed communications to the Receiver, much of which related to the insurance plan that Capstone initiated and maintained over various Receivership Properties, including Crosby Green.  There is no evidence to suggest that Capstone entered into a separate agreement with the Receiver.  The Receiver obtained permission from the bankruptcy court to engage Capstone and paid Capstone for its services.

Around August of 2008—roughly one month before Hurricane Ike destroyed Crosby Green—the Receiver contacted HRH to renew Crosby Green's insurance policy.  The same inaccurate building information that HRH used to secure the original insurance policy was incorporated into the renewed insurance policies with Defendants RSUI Group, Inc., RSUI Indemnity Company, Landmark American Insurance Company, Covington Specialty Insurance Company (collectively "RSUI"), and Commonwealth.

In mid-September 2008, Hurricane Ike destroyed Crosby Green.  Commonwealth paid its policy limit of $5 million relating to damages but RSUI denied coverage because, based on the inaccurate building information, Crosby Green had not secured the appropriate insurance coverage.  Consequently, Plaintiffs claim damages of over $5 million against RSUI, HRH, and

Capstone. Capstone now moves to dismiss Plaintiffs' breach of contract claim for lack of personal jurisdiction.

## II.  DISCUSSION

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.[2]

"'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[3] "It is frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[4]

To satisfy the constitutional requirement of due process, the defendant must have such "minimum contacts" with the forum state "that he should reasonably anticipate being haled into court there."[5] The "minimum contacts" standard may be met by a finding of either general

---

[2]*Behagen v. Amateur Basketball Ass'n of the U.S.*, 744 F.2d 731, 733 (10th Cir. 1984), *cert denied*, 471 U.S. 1010 (1985) (internal citations omitted).

[3]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[4]*Sys. Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097 (D. Utah 2003).

[5]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291, 297 (1980).

jurisdiction or specific jurisdiction.[6]  When the "defendant has 'purposely directed' his activities at residents of the forum," courts of the forum may exercise specific jurisdiction over cases that "arise out of or relate to those activities."[7]  For the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[8]  For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[9]

If the Court finds that the defendant had adequate minimum contacts with the forum state, the Court must also determine that personal jurisdiction is reasonable in light of the circumstances surrounding the case, or, in other words, that exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[10]

A.   GENERAL JURISDICTION

Plaintiffs assert that Capstone's "hundreds of communications to the Receiver" create "substantial and continuous contact with the State of Utah" sufficient to establish general jurisdiction.[11]

---

[6] *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090-91 (10th Cir. 1998).

[7] *Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[8] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[9] *Soma Med. Int'l*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[10] *Burger King*, 471 U.S. at 476.

[11] Docket No. 45, at 13.

In *Helicopteros Nacionales de Colombia, S.A. v. Hall*,[12] the United States Supreme Court found general jurisdiction inappropriate where the defendant did not have a place of business or license to do business in the forum state, and its contacts with the forum state consisted of sending its chief executive officer to the forum state to negotiate a contract, accepting payments from the forum state, purchasing helicopters and other equipment from the forum state, and sending personnel to the forum state to be trained.[13]

Here, it is undisputed that Capstone does not have a place of business in the state of Utah. Nor is Capstone actively engaging new clientele in Utah. Similar to the facts of *Helicopteros*, the only actions taken by Capstone in Utah involve Capstone's on-going relationship with the Receiver. Such contacts are insufficient to support a finding of general jurisdiction. The Court therefore finds general jurisdiction inappropriate in this case.

B.   SPECIFIC JURISDICTION

As previously noted, in determining whether Capstone has sufficient minimum contacts with Utah for specific jurisdiction, Plaintiffs must first show that Capstone "purposefully directed its activities at residents of [Utah]."[14] If Plaintiffs meet this showing, they must also demonstrate that their "claim arises out of or results from 'actions by [Capstone] that create a

---

[12] 466 U.S. 408 (1984).

[13] *Id.* at 408.

[14] *OMI Holdings*, 149 F.3d at 1091.

substantial connection with [Utah].'"[15] In making these two determinations, the Court examines "the quantity and quality of [Capstone's] contacts with [Utah]."[16]

Plaintiffs assert that Capstone purposefully availed itself of the privilege of doing business in Utah when it developed a business relationship with the Receiver. Plaintiffs cite the following as evidence of this purposeful availment: (1) over the course of a year, Capstone directed "hundreds of telephone calls and email communications . . . to the Utah-based Receiver;"[17] and (2) Capstone representatives traveled to Utah on one occasion to meet with the Receiver and talk about the Receivership Properties—discussions at this meeting "likely included Crosby Green."[18]

In *Rambo v. American Southern Insurance Co.*,[19] the Tenth Circuit held that "telephone calls and letters may provide sufficient contacts for the exercise of personal jurisdiction."[20] In addition, the United States Supreme Court has held that, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."[21] However, in either

---

[15]*Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987)).

[16]*Id.*

[17]Docket No. 45, at 6.

[18]Docket No. 46, at 2.

[19]839 F.2d 1415 (10th Cir. 1988).

[20]*Id.* at 1418.

[21]*Burger King*, 471 U.S. at 475 n.18 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

7

instance "the exercise of jurisdiction depends on the nature of those contacts."[22] Thus, a visit or the mere "existence of letters or telephone calls to the forum state related to the plaintiff's action will not necessarily meet due process standards."[23]

"The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.'"[24] "The constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State."[25] Thus,

> [t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'
>
> "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, [citations omitted] or of the 'unilateral activity of another party or a third person.' Jurisdiction is proper, however, where the contacts proximately result

---

[22]*Rambo*, 839 F.2d at 1418.

[23]*Id*. (citing *Nicholas v. Buchanan*, 806 F.2d 305, 307 (1st Cir. 1986) (plaintiff's "generalized reference to inter-state contacts 'via telephone communications' and 'via U.S. mail,' without more," did not satisfy due process requirements), *cert. denied*, 481 U.S. 1071 (1987); *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) ("ordinarily 'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state'"), *cert. denied*, 475 U.S. 1122 (1986); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp*., 676 F.2d 309, 314 (8th Cir. 1982) ("use of interstate facilities (telephone, the mail) . . . are secondary or ancillary factors and cannot alone provide the 'minimum contacts' required by due process")).

[24]*Id*. at 1419 (quoting *Hanson*, 357 U.S. at 253).

[25]*Id*. (quoting *Burger King*, 471 U.S. at 474-75) (other citations omitted).

from actions by the defendant himself that create a 'substantial connection' with the forum State."[26]

In the instant case, it is undisputed that Capstone did not initiate contact with the Receiver. It was the unilateral action of the Receiver that caused Capstone's initial involvement in the forum. At best, Plaintiffs may argue that by continuing communications with the Receiver regarding Crosby Green Capstone necessarily availed itself of the laws of the State of Utah. Plaintiffs have not provided to the Court any evidence or allegations indicating when, or by what communication, an availment took place.

Indeed, Plaintiffs have not addressed the content of the communications between Capstone and the Receiver and instead appear to rely exclusively on the number and frequency of the communications as evidence of Capstone's alleged availment. As discussed above, the mere "existence of letters or telephone calls to the forum state related to the plaintiff's action" do not demonstrate purposeful availment. Similarly, Capstone's receipt of "significant payments" from the Receiver and its meeting with the Receiver in Utah do not, of themselves, demonstrate purposeful availment. Absent from the evidence before the Court is any indicia of a solicitation of business from the Receiver by Capstone.

The Court is aware of "no acts by [Capstone] that can be construed as purposeful contacts with the state of [Utah]."[27] Rather, Capstone's contacts with Utah were fortuitous, resulting from the Receiver's appointment in the State of Utah after Capstone contracted to manage Crosby Green in Texas. For this reason, the Court finds that Capstone did not purposefully avail itself of

---

[26]*Id*. (quoting *Burger King*, 471 U.S. at 474-75).

[27]*Id*. at 1420.

doing business in the State of Utah.  Because Plaintiffs have failed to demonstrate purposeful availment on the part of Capstone, they have not carried their burden to prove specific jurisdiction over Capstone.

### III.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to demonstrate Capstone had sufficient minimum contacts with the State of Utah that it should reasonably have anticipated being haled into court in this forum.  Therefore, the Court is without in personam jurisdiction over Capstone.  It is therefore,

ORDERED that Defendant Capstone Real Estate Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Docket No. 39) is GRANTED.

DATED   June 13, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge